## KENNEY a. THE PEOPLE.

*Supreme Court, Second District; General Term, December,* 1863.

### INTOXICATION OF CRIMINAL.—CHARGE TO THE JURY.

Upon an indictment for murder, the fact of the voluntary intoxication of the prisoner at the time of the killing is not material in determining whether the offence is murder or only manslaughter.

Of the proper terms in which to charge the jury as to the legal effect of the fact of intoxication in cases of crime.

Writ of error to the Oyer and Terminer of Kings county.

The facts are stated in the opinion.

*C. E. Pratt* and *William L. Gill*, for the plaintiff in error.

*S. D. Morris*, for defendants in error.

BY THE COURT.—BROWN, J.—The plaintiff in error, Michael Kenney, was convicted of the crime of murder in the first de-

gree, at the Court of Oyer and Terminer, held for the county of Kings in July, 1863, and the record removed into this court by writ of error. The crime was committed with circumstances of brutality and atrocity almost unexampled. The prisoner is a car driver. On the night of the 21st of April, at eight o'clock, with his wife and two small children, he entered the grocery store of Frederick Mohrmann, at the corner of Fulton and Albany avenues, in the city of Brooklyn, and purchased some groceries for his family use. While there he commenced speaking about some railroad conductor with whom he had a quarrel about two hours previous. His wife said the conductor was a nice man, and did not want to do him any harm. He told her in an angry tone not to interfere in his business, and be quiet, otherwise he would punch her. He thereupon struck her in the face and kicked her. Mohrmann came from behind the counter and told him to leave the store—that he wanted no fighting, and if he did not stop he would put him out. Kenney said he could not put him out. Mohrmann made the attempt and failed. He thereupon called the witness, Rink, to assist him, and by their joint efforts he was removed from the store to the street, and the door locked, and while this was being done he declared he would kill the Dutch son of a bitch —meaning Mohrmann. The prisoner then threw stones through the windows and doors of the store, and said he wanted his two children. The door was opened by Mohrmann and the children put out into the street, and the door closed again. He also threw coal, a coal shovel, a measure, and with a stone of about twenty pounds weight, smashed open the door, and came into the store. Here he took up a saw and a piece of ham and threw them at Mohrmann and struck him with them. The prisoner went again into the street, and the door was again shut against him. He broke the door in once more and came into the store. There was in the store what the witnesses call a meat bench, upon which was lying a large knife. The prisoner seized this knife and struck the bench once, then rushed into the room behind the store, when he met the deceased, John Ravensburg, a person residing with Mohrmann at the time, and with whom the prisoner had no words or controversy, and struck him three blows or thrusts with the knife, two of which entered the chest, and the other one the abdomen, of the

Kenney *a.* The People.

deceased, who died therefrom almost instantly. The prisoner at once became quiet, consulted with his wife where he should go, and as to the best means to escape. She recommended him to go to East Brooklyn, and he left the scene of the murder, going in that direction, after telling his wife that if any policeman made inquiry to say he had not been about there that night. The proof leaves little doubt that the prisoner was in a state of intoxication more or less at the time, but otherwise in the full possession of his senses, and quite conscious of what he was doing. There was proof also to show that while sober he was a civil man, but when drunk unusually vicious.

When the evidence was closed the counsel for the prisoner asked the court to charge—

1st. That intoxication does not furnish immunity of crime, but it may be considered in determining what degree of crime has been committed.

2d. That intoxication may be considered in determining whether the homicide was committed by premeditated design.

3d. If the jury believe that the accused was in a state of mind, from intoxication, that rendered him incapable of premeditation or design, they must find him guilty of manslaughter.

4th. If the jury find the accused was in such a state of mind, although caused by the voluntary use of intoxicating liquor, that his judgment was obscured or impaired, so that he was incapable of knowing the degree of violence he was perpetrating, or of properly calculating its effects, they must find for the lesser offence, manslaughter.

The court refused to charge either of the propositions, except so far as the same are embraced in the charge and instructions to the jury (to which I shall presently refer), and the prisoner's counsel excepted.

The two first propositions are but different modes of expressing the same thought, that the voluntary intoxication of a prisoner at the time of the killing, is material to determine whether the homicide of which he is charged is the crime of murder or only the lesser offence of manslaughter. The essential and radical distinction between murder and manslaughter, is the presence of the malice of the common law, or that which is much the same thing, the premeditated design of the statute,

—and the proposition of the counsel was, that the jury might infer the absence of malice or premeditated design from the intoxication of the prisoner at the time of the killing. To constitute the crime of murder, the malice or the design need not be proved. When the act is committed the law imputes the design. It proceeds upon the sensible rule that a man is presumed to intend to do what he really does, and if he strikes a blow with a deadly weapon, which necessarily or reasonably results in death, the law will impute to him the design to destroy life, and this too whether he be drunk or sober. As has been well observed, a man under the influence of " voluntary intoxication shall be subject to the same rules of conduct, and the same legal inferences, as a sober man."

The third and fourth proposition of the prisoner's counsel, which the court was requested to charge, are to the same effect,—that if the jury believed the accused was in a state of mind from intoxication that rendered him incapable of premeditation or design, or that he was in a state of mind from voluntary intoxication which impaired his judgment so that he was incapable of knowing the degree of violence he was using, they must find him guilty of the lesser offence of manslaughter. This would have been saying to the jury that they might infer incapacity to commit the higher grade of crime, and the absence of the knowledge and the discrimination which criminal law imputes to all sane men, from the voluntary intoxication of the prisoner at the time the homicide was effected. The law upon all these subjects is too well, and has been too long settled by adjudicated cases, to need argument or elaboration. The case of Rex *a.* Carroll, referred to by Judge Denio, in the People *a.* Rogers (18 *N. Y.*, 9), was in most respects like the present. It was a case of murder by stabbing, with provocation, and the court held, that the intoxication of the prisoner was not at all material to be considered. In this same case of the People *a.* Rogers, the prisoner's counsel requested the court to instruct the jury, " that if they were satisfied that by reason of intoxication there was no intention or motive to commit the crime of murder, they should convict the defendant of manslaughter only." The Court of General Sessions refused so to charge, and the Court of Appeals held the refusal to be right, and said: " If by this request the counsel for the defendant meant, as the

request seems to have been interpreted by the Supreme Court, that the jury should be instructed to take into consideration the intoxication of the defendant in determining the intent with which the homicide was committed, the proposition is not law. It has never yet been held that the crime of murder can be reduced to manslaughter by showing that the perpetrator was drunk, when the same offence if committed by a sober man would be murder."

The judge in his charge to the jury, and in reference to the request of the prisoner's counsel, said, in substance, that voluntary intoxication furnished no immunity or excuse for crime, and even where intent is a necessary ingredient in the crime charged, so long as the offender is capable of conceiving a design, he will be presumed in the absence of proof to the contrary, to have intended the natural consequences of his own act,—and when one without provocation kills another with a deadly or dangerous instrument, no degree of intoxication, short of that which shows that he was utterly incapable of acting from motive, will shield him from conviction. In the present case the principal question to be determined by the jury, if they found the prisoner guilty of killing the deceased, was whether the crime was murder or manslaughter. To convict of murder it was necessary that the killing should have been perpetrated from a premeditated design to effect the death of the deceased or of any human being,—it was therefore sufficient to convict if the intention of the prisoner was to kill the storekeeper, although he may not have intended to kill the deceased. If that intention existed, although it was conceived and formed immediately before the fatal act was committed, the offence was murder. If on the other hand the act was committed without a design to effect death, in the heat of passion, then the crime would be reduced to manslaughter."

These instructions to the jury, upon the propositions of the prisoner's counsel, were quite as favorable to him as the law would allow, and afforded no legal ground of exception.